UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE: BRYAN PAZDZIERZ,

          Debtor,

_____/

Case Number 11-10016
Bankr. Number 10-04116
Honorable David M. Lawson

FIRST AMERICAN TITLE INSURANCE
COMPANY,

          Appellant,

v.

BRYAN PAZDZIERZ,

          Appellee.

_____/

**OPINION**

Appellant First American Title Insurance Company has appealed an order entered by the bankruptcy court granting summary judgment to debtor Bryan Pazdzierz in an adversary proceeding brought by First American to declare certain obligations nondischargeable under 11 U.S.C. § 523(a)(2). First American had furnished commitments to issue title insurance policies to lenders who eventually suffered extensive financial losses as a result of a fraudulent real estate scheme perpetrated by one Randy Saylor. As part of a settlement of the insurance coverage dispute between First American and its putative insured over losses incurred in those fraudulent transactions, the insured assigned its rights in the underlying promissory notes to First American. First American alleges that Pazdzierz, a borrower, made false representations to the lender when he procured his loans, and he otherwise was involved in Saylor's fraudulent scheme. After Pazdzierz filed for bankruptcy, listing the note obligations among his debts, First American brought the present

adversary proceeding to enforce the notes and declare the debts nondischargeable. The bankruptcy court determined that the claims that were assigned to First American sounded in fraud, which are not assignable under Michigan law; First American could not prove an essential element under section 523(a)(2)(B) to establish nondischargeability because it did not itself rely on fraudulent misrepresentations made by the debtor; and First American had no claim against Pazdzierz under a subrogation theory because the original lender's covered loss was not attributable to Pazdzierz's conduct. This Court finds that First American's effort the enforce to promissory notes does not violate the rule that fraud claims are not assignable, First American may assert its assignor's reliance on Pazdzierz's misrepresentations to satisfy section 523(a)(2)(A) & (B)(iii), and First American was never subrogated to any claims against Pazdzierz. Therefore, the Court reverses the bankruptcy court's order granting Pazdzierz's motion for summary judgment.

I.

In its amended complaint, First American alleged that in October and November 2007, Brian Pazdzierz borrowed money from Commercial Loan Consultants and I F Key Holdings to purchase four carwash businesses in Detroit, Martin, and Grand Blanc, Michigan. Pazdzierz signed promissory notes for each of the loans, which were secured by real estate mortgages signed by Pazdzierz. The lenders immediately assigned the loans to Bayview Financial, L.L.C. following the closings.

First American's agent, Patriot Title Agency, issued commitments for policies of title insurance to each of the lenders; the mortgage policies were to be underwritten by First American. Patriot Title also arranged for First American to issue closing protection letters (CPLs) to the lenders

that indemnified the lenders and their assigns from any loss arising from the fraud or dishonesty of Patriot Title in handling funds.

Unbeknownst to First American at the time, Patriot Title was owned by Randy Saylor. Pazdzierz worked for Saylor beginning in July 2007, providing security at Saylor's nightclub and scouting commercial property offered for sale for another of Saylor's businesses. Pazdzierz contends that Patriot Title, through Saylor, carried out an elaborate scheme to induce mortgage lenders, who believed they were lending funds to legitimate borrowers, to purchase property in exchange for payments on the notes and first lien mortgage rights on the real estate. Pazdzierz asserts that Saylor carried out this scheme by inducing banks to lend funds to applicants who, in many cases, should never have been approved by the lenders as borrowers. He further alleges that many of the loan applications were altered by Saylor to inflate the net worth of the applicants, and that after the loans were approved, the lenders, following Patriot Title's instructions, would deposit the loan proceeds into Patriot Title's escrow account, where they were to be held until closing. Pazdzierz alleges that Saylor withdrew the proceeds from the escrow accounts for his own personal use and neglected to record a number of the mortgages in the names of the lenders. The scheme involved thirty-four properties and caused a loss of over $10,000,000. Pazdzierz acknowledges that the four carwash-purchase loan documents bear his name, although he denies the authenticity of many of the loan documents.

First American alleged in the adversary proceeding that Pazdzierz's loan documents contained several false statements regarding his income and assets. It also alleged that at each loan closing, Pazdzierz executed a settlement statement that falsely represented that he had paid a

substantial sum of money at the time of the closing toward the down payment. First American alleged that the original lender relied on those false statements in making the loans.

When First American learned of the fraudulent transactions, it contacted Patriot Title and demanded an audit of its files. However, when it arrived to conduct the audit in February of 2008, Patriot Title's office was abandoned. First American then filed suit against Patriot Title, Randy Saylor, and former Patriot Title employees in the Oakland County, Michigan circuit court, alleging fraud. First American eventually obtained a default judgment against Saylor on February 6, 2009 for $10,172,840.

Bayview Financial was unable to foreclose and take title to the mortgaged properties upon default because the mortgages were never recorded. Bayview therefore made a claim to First American pursuant to the commitments and CPLs for the title defects in the real estate that secured the loans. Although First American initially agreed to indemnify Bayview for its losses, it later recanted, citing Bayview's failure to perform due diligence as to the borrower's creditworthiness. First American specifically mentioned Pazdzierz in its correspondence with Bayview, noting that his loan application, which contained no information or tax returns, was indicative of the fact that Bayview failed to question information provided by him.

Bayview then filed suit against First American for its failure to pay Bayview's title policy claim. The parties ultimately entered into a confidential settlement whereby Bayview Financial assigned to the plaintiff 75% of its interest in the Notes in exchange for payment of an undisclosed sum of money.

After Pazdzierz filed his Chapter 7 bankruptcy petition, First American commenced its adversary proceeding to contest the dischargeability of the debt memorialized by the four promissory

notes. Pazdzierz filed a motion to dismiss the complaint, which was denied by the bankruptcy court. Thereafter, Pazdzierz moved for summary judgment, arguing that arguing that under Michigan law, claims grounded upon fraud are non-assignable; First American was precluded from seeking a judgment against it due to Michigan's prohibition against joint tort liability; and First American's claims were barred by the doctrine of judicial estoppel.

The bankruptcy court granted the motion on November 23, 2010, issuing an opinion from the bench. The court held that plaintiff First American could not satisfy all the elements of 11 U.S.C. § 523(b)(2)(B) because it could not show that the defendant debtor made any representations to First American, or that First American reasonably relied upon any representations made to it by the defendant debtor. The court rejected First American's argument that the assignment allowed it to stand in the shoes of the original lenders and assert a right to enforce the promissory notes because it seems to have viewed the manner in which First American succeeded to that right as an assignment of a fraud claim, which is forbidden under Michigan law. The court also found significant the fact that the assignment of the notes resulted from a settlement of First American's obligation to its insured that arose from the title commitments it furnished. That circumstance precluded a finding of detrimental reliance on any misrepresentation by Pazdzierz, the court believed, because the title commitments themselves were issued upon the representations of Saylor and Patriot Title, not Pazdzierz. The court did not address the other grounds of the defendant's motion.

First American then filed a motion for reconsideration because the bankruptcy court failed to consider whether the debt is non-dischargeable under the theory of subrogation. The court denied the motion on December 20, 2010, reasoning that because Bayview's insured loss resulted from

defects in the title to the real estate securing the notes, First American's subrogation rights were confined to pursuing the parties who caused the insured loss, namely Saylor and Patriot Title, who failed to record the mortgages. Moreover, the court found that First American's liability under the title commitments did not arise from a fraud or misrepresentation by debtor Pazdzierz.

The plaintiff timely appealed the order granting summary judgment.

II.

The bankruptcy court's order granting the defendant's motion for summary judgment and denying reconsideration terminated the adversary proceeding. District courts have jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. 28 U.S.C. § 158(a)(1); *Central States, S.E. & S.W. Area Pension Fund v. U.S. Truck Co. Holdings, Inc.* (*In re U.S. Truck Co. Holdings*), 341 B.R. 596, 599 (E.D. Mich. 2006). "The bankruptcy court's findings of fact are reviewed under the clear-error standard, and its conclusions of law are reviewed *de novo*." *B-Line, LLC v. Wingerter* (*In re Wingerter*), 594 F.3d 931, 935-36 (6th Cir. 2010) (citing *Behlke v. Eisen* (*In re Behlke*), 358 F.3d 429, 433 (6th Cir. 2004)).

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A trial is required only when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Where the facts are mostly settled, and the question before the court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).

When addressing the adversary proceeding amended complaint, the bankruptcy court and the parties appear to have conflated the issues of whether First American's claim is permitted by state law, and whether it is provided for under the statute. However, the inquires are necessarily distinct. *Grogan v. Garner*, 498 U.S. 279, 283-84 (1991) (holding that "[t]he validity of a creditor's claim is determined by rules of state law[, but] the issue of nondischargeability [is] a matter of federal law governed by the terms of the Bankruptcy Code" (citations omitted))

A. Assignability of the Notes

First American argues that the bankruptcy court erred when it found that the assignment of the notes violated the rule that claims for fraud cannot be assigned under Michigan law. The parties do not dispute the general rule of Michigan law set out in *Jones v. Hicks*, 358 Mich. 474, 100 N.W.2d 243 (1960), upon which the bankruptcy court relied, that "a right of action for fraud is personal and not assignable." *Id.* at 482, 100 N.W. at 245 (quoting *Cochran Timber Co. v. Fisher*, 190 Mich. 478, 481, 157 N.W. 282, 283 (1916)). First American contends instead that its effort to enforce the promissory notes do not constitute an action for fraud, even though it alleges that the debtor made false statements to induce the lender to make the loans.

The restriction on assignment of fraud claims under Michigan law "has no application to an assignment of something which is itself tangible . . . . In such case, the right to whatever remedy the assignor has follows the assignment." *Sweet v. Clay*, 88 Mich. 1, 12, 49 N.W. 899, 901 (1891). The Michigan Supreme Court has explained that "the law will not encourage speculation in the naked right to complain of a fraud, but a clear distinction is made between an assignment of a naked right to complain of a fraud and the assignment of a liquidated claim or judgment in favor of a creditor." *Id.* at 10, 49 N.W. at 900. For example, in an action by a creditor to set aside a fraudulent transfer,

the Michigan Supreme Court stated: "It is true, as a general proposition, that a distinct right of action for fraud is not assignable, but where the right to enforce a claim which is in itself assignable depends upon showing fraud incidentally the rule has no application." *Howd v. Breckenridge*, 97 Mich. 65, 69, 56 N.W. 221, 222-23 (1893).

First American's claim against Pazdzierz in the bankruptcy court was based on unpaid promissory notes. A promissory note is a negotiable instrument, Mich. Comp. Laws § 440.3104(1), (5) (stating that "'negotiable instrument' means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if . . . [i]t is payable . . . to order at the time it is issued . . . [and] [i]t is payable . . . at a definite time"; "[a]n instrument is a 'note' if it is a promise"), that may be transferred to another, Mich. Comp. Laws § 440.3203(1). "Transfer of an instrument . . . vests in the transferee any right of the transferor to enforce the instrument . . . ." Mich. Comp. Laws § 440.3203(2). The notes evidenced a liquidated debt and had value in themselves. They constituted much more than "the naked right to complain of a fraud"; rather, they would support an independent cause of action apart from any allegation of fraud.

The right to collect the notes plainly was assignable. "Under general contract law, rights can be assigned unless the assignment is clearly restricted. *Burkhardt v. Bailey*, 260 Mich. App. 636, 653, 680 N.W.2d 453, 462 (2004) (citing Calamari & Perillo, Contracts (3d ed), § 18-10, p. 735). There is no suggestion that the notes contained any restrictions on assignment. When an assignment is made, "[a]n assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses." *Ibid.* (citing *Nichols v. Lee*, 10 Mich. 526, 528-29 (1862)).

This Court concludes that the four promissory notes upon which First American premised its claim against the debtor were assignable and enforceable under Michigan law by First American as assignee.

B.  Effect of Assignment under 11 U.S.C. § 523(a)(2)(B)(iii)

Looking at the literal language of section 523(a)(2)(B), the bankruptcy court concluded that the assignee of a debt cannot assert a fraud perpetrated on the assignor as a ground to contest dischargeability.  Section 523(a) states:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt– . . .
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]
> (B) use of a statement in writing–
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive . . . .

11 U.S.C. § 523(a)(2).  The plaintiff alleged in its amended complaint that Pazdzierz obtained credit (represented by the promissory notes) by the following false representations: (a) the amount of his monthly income and his bank deposits; (b) that he paid his own cash amounts toward the purchase price; and (c) that he actually intended to acquire and operate the carwash businesses.  Am. Compl. ¶ 22(a)-(c).  The first representation certainly amounts to a "statement respecting the debtor's . . . financial condition," and therefore the plaintiff must prove that it was in writing (which it allegedly was) and the four elements in section 523(a)(2)(B) were satisfied.  The last two representations related to the debtor's conduct at the loan closings, not his financial condition; therefore, the plaintiff could prove nondischargeability by satisfying section 523(a)(2)(A).

The bankruptcy court's determination that the assignee of a debt cannot assert a fraud perpetrated on an assignor was based on the statutory language specifying that a materially false statement of financial condition must have been relied upon by "the creditor to whom the debtor is liable for such money, property, services, or credit." 11 U.S.C. § 523(a)(2)(B)(iii). The court believed that subsection referred to the creditor who was challenging dischargeability, not the creditor who made the loan. That requirement may be a condition of subsection (B), but it imposes no limitation on subsection (A). Instead, the general rule applies that "[a]n assignee stands in the shoes of the assignor and acquires the same rights as the assignor possessed." *First of America Bank v. Thompson*, 217 Mich. App. 581, 587, 552 N.W.2d 516, 520 (1996) (citing *In re Forfeiture of $126,174*, 191 Mich. App. 453, 456, 479 N.W.2d 8 (1991)); *see Professional Rehab. Assocs. v. State Farm Mut. Auto. Ins. Co.*, 228 Mich. App. 167, 177, 577 N.W.2d 909, 914 (1998); *see also Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 285 (2008) (recognizing that "history and precedents . . . make clear that courts have long found ways to allow assignees to bring suit" and that "that there is a strong tradition specifically of suits by assignees for collection"). Under subsection (A), therefore, the plaintiff, as assignee, may recover by showing "justifiable reliance" on a false pretense or representation by the creditor who extended the credit. *See Field v. Mans*, 516 U.S. 59, 74-75 (1995); *In re Dobek*, 278 B.R. 496, 508 (Bankr. N.D. Ill. 2002) (holding that under section 523(a)(2)(A), "the timing of the fraud and the elements to prove fraud focus on the time when the lender . . . made the extension of credit to the Debtor," and that the "assignee of the Agreement[] steps into the shoes of its assignor . . ., and the inquiry of whether a creditor justifiably relied on Debtor's alleged misrepresentations is focused on the moment in time when that creditor extended the funds to Debtor"). The plaintiff should have been allowed to proceed under subsection (A).

Nor can the Court agree with the bankruptcy court's rejection of the amended complaint on the ground that only the original creditor to whom the debtor submitted a false financial statement can sue for nondischargeability under subsection 523(a)(2)(B). The Seventh Circuit, addressing the same argument made by a debtor who contended that an assignee had no legal recourse against him, held, "That cannot be true: the very reason that the institution of assignment exists is to enable Creditor to transfer its rights against Debtor (Meyer) to Assignee (Federal Bank)." *In re Meyer*, 120 F.3d 66, 70 (7th Cir. 1997).

This Court also must part company with the bankruptcy court's disapproval of the Ninth Circuit's reasoning in *Boyajian v. New Falls Corporation (In re Boyajian)*, 564 F.3d 1088 (9th Cir. 2009), a case which held that an assignee stood in the shoes of the original creditor and could bring a claim under subsection 523(a)(2)(B). That court addressed the same question raised here: whether an assignee could satisfy section 523(a)(2)(B)(iii)'s requirement of "reasonable reliance" by the creditor to whom the debtor is liable. *Id.* at 1090 ("The question before us is whether the assignee of a debt must itself have relied on the materially false statement, or whether it is enough that the original creditor did so."). Examining the language of subsection (B)(iii), requiring reliance by "the creditor to whom the debtor is liable for such money, property, services, or credit," the court reasoned that "[t]he most natural reading of the word 'is' in subsection (iii) is simply that the debt is non-dischargeable if, at the time the money is obtained by the debtor, he or she used a materially false written statement that was intended to deceive." *Id.* at 1091. In other words, detrimental reliance must have been made by the creditor who extended the credit, not necessarily the creditor who challenges dischargeability.

The *Boyajian* court also believed its interpretation of the statute was consistent with congressional intent.

> Congress was undoubtedly aware that under general principles of assignment law an assignee steps into the shoes of the assignor. Had Congress wished for assigned debts to be treated differently under § 523(a)(2)(B), it would have done more than rely on the word "is" in subsection (iii). In the absence of such specific language, we believe that Congress intended that the general law of assignment remain applicable. That is, assuming New Falls was indeed the recipient of a general assignment of the original judgment, it can stand in the shoes of its assignor and pursue a non-dischargeability action under § 523(a)(2)(B).

*Ibid.* Finally, the court fortified its reasoning by observing that its construction of section 523(a)(2)(B) was consistent with the policy goals of the Bankruptcy Code, noting "the perversity of permitting dishonest debtors to receive a discharge through the fortuity that their creditor chose to assign the debt." *Id.* at 1092.

The Court finds that reasoning compelling. It is faithful to the structure and language of section 523(a)(2)(B), and it is consistent with the general policy of the Bankruptcy Code, which "limits the opportunity for a completely unencumbered new beginning to the honest but unfortunate debtor." *Grogan*, 498 U.S. at 286-87 (quotation marks omitted). The Court holds, therefore, that a creditor in bankruptcy may satisfy the requirements of 11 U.S.C. § 523(a)(2)(B)(iii) by showing that the creditor to whom the debtor was initially "liable for such money, property, services, or credit reasonably relied" on a materially false written statement respecting the debtor's financial condition when extending credit and creating the debt being challenged as nondischargeable.

## C. Subrogation

In its motion for reconsideration, the plaintiff argued that it should be able to maintain its nondischargeability claim as subrogee of its insured, Bayview Financial. The bankruptcy court rejected that argument because Bayview's loss arose from the impairment of its collateral, which

in turn resulted from Patriot Title's failure to record the mortgages. The bankruptcy court found that Pazdzierz played no role in causing the title defect that the plaintiff insured, and therefore the principle of subrogation would not provide the plaintiff a claim against the debtor. This Court agrees.

Under Michigan law, "[l]egal or equitable subrogation substitutes one person in place of another with reference to a lawful claim, demand or right so that he who is substituted succeeds to the rights of the other." *Commercial Union Ins. Co. v. Medical Protective Co.*, 136 Mich. App. 412, 419, 356 N.W.2d 648, 652 (1984); *see also Steinmann v. Dillon*, 258 Mich. App. 149, 154, 670 N.W.2d 249, 252 (2003) (subrogation is "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party *with respect to any loss covered by the policy*" (emphasis added)). It is well settled that "whether a right of subrogation arises by operation of law or by contract, the controlling general principles are the same: the subrogee, upon paying an obligation owed to the subrogor as the primary responsibility of a third party, is substituted in the place of the subrogor, thereby attaining *the same* and *no greater rights* to recover against the third party." *Citizens Ins. Co. of America v. American Cmty. Mut. Ins. Co.*, 197 Mich. App. 707, 709, 495 N.W.2d 798, 799 (1992) (emphasis added).

First American's liability to Bayview Financial arose solely from the title policy commitment First American underwrote. Bayview could contend that it was defrauded when Pazdzierz procured his loans by means of fraudulent statements, or by Patriot Title's failure to record the mortgages. But First American did not insure Bayview against fraud. It insured the title to the mortgaged property against defects and encumbrances. First American never alleged in its amended complaint that Pazdzierz's conduct caused a "loss covered by the policy." *Steinmann*, 258 Mich. App. at 154,

670 N.W.2d at 252. Therefore, First American cannot stand on subrogation as a viable theory of recovery against Pazdzierz.

### III.

For these reasons, the judgment of the bankruptcy court is **REVERSED**, the order granting summary judgment to the defendant-debtor Bryan Pazdzierz is **VACATED**, and the case is **REMANDED** for further proceedings consistent with this opinion.

                                             s/David M. Lawson
                                             DAVID M. LAWSON
                                             United States District Judge

Dated: October 24, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 24, 2011.

                               s/Deborah R. Tofil
                               DEBORAH R. TOFIL